# IN THE COURT OF APPEALS OF IOWA

No. 17-1189
Filed October 24, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LOWELL ALLAN EWALT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Buchanan County, Kellyann M. Lekar, Judge.

        The defendant challenges the district court's denial of his motion to suppress. **AFFIRMED.**

        Thomas P. Frerichs of Frerichs Law Office, P.C., Waterloo, for appellant.

        Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

        Considered by Potterfield, P.J., Bower, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**BLANE, Senior Judge.**

Lowell Ewalt appeals from his conviction for possession of a controlled substance (marijuana). He challenges the district court's denial of his motion to suppress evidence obtained after the initiation of a routine traffic stop for speeding. Ewalt maintains the officer unconstitutionally extended the duration of the stop; he also argues he should have been told his *Miranda* rights[1] before the officer asked him questions pertaining to his use of marijuana.

## I. Background Facts and Procedures.

On August 15, 2015, Trooper Jim Smith initiated a stop of a vehicle traveling nine miles per hour more than the posted speed limit. When the officer reached the driver's side window to speak to the driver—who he later learned was Ewalt—he noted that Ewalt was holding a freshly lit cigarette. According to his testimony, in the officer's experience, drivers sometimes light cigarettes once a stop has been initiated in order to mask the odor of alcohol or marijuana. Additionally, the officer later testified that when he reached the window, Ewalt's eyes were watery and bloodshot and Ewalt's hand shook when he reached for the registration. The officer noted that the vehicle was registered under a woman's name. While the car had Iowa license plates, Ewalt's driver's license had been issued by the state of Missouri. Ewalt told the officer that he was just leaving "our golf course," referencing the local course. The officer testified Ewalt avoided making eye contact with him while they spoke. According to the officer's testimony, based on all of the foregoing, he was then concerned both that Ewalt was driving while under

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966).

the influence and that there was an issue with Ewalt driving the vehicle—the officer questioned whether Ewalt was able to obtain an Iowa driver's license and wondered if he may be barred from driving in the state.

The officer asked Ewalt to come sit with him in his squad car; he told him he would need to sign something on the computer that was in the front seat of the squad car. Ewalt walked himself to the front, passenger seat of the squad car and got in. He was not under restraints, and the passenger-side door was not locked. During this time, Ewalt's passenger remained seated in the car Ewalt was driving.

While Trooper Smith and Ewalt sat in the front seat of the squad car, the officer asked Ewalt if he had a criminal record. Ewalt responded that he had a marijuana conviction a couple years before and another one five years before that. The officer then asked Ewalt when he had last smoked marijuana; Ewalt reported it had been about one week.

Trooper Smith expressed that his job was to ensure that Ewalt was not driving while under the influence; the officer then began asking Ewalt questions about his tolerance, including his age, how many years he had been smoking marijuana, how much marijuana he smokes at a time, and how often he smokes it. Ewalt answered the questions and informed the officer that he smokes marijuana to self-medicate for pain.

Trooper Smith then began administering some field sobriety tests. Ewalt showed two clues in the horizontal gaze nystagmus test. Additionally, the officer checked Ewalt's tongue and noted some heat bumps, which the officer later

testified is associated with smoking marijuana.[2]  The officer indicated he had some reason to believe Ewalt may be under the influence and then asked Ewalt again when he had last smoked marijuana; Ewalt changed his answer, stating he had smoked marijuana the night before last.  Trooper Smith asked Ewalt if there were drugs in the car, and Ewalt responded, "I don't think so."  The officer pressed him, indicating he would view Ewalt's previous statements with less credibility if he learned there were drugs in the car when he spoke with the passenger.  Ewalt then changed his answer, stating, "There might be some in there.  We had a little canister."  When asked where it would be located, Ewalt responded, "If it's in the car, I would say probably in one of our bags."  Ewalt agreed that if there were drugs in the car, they were his and not the passenger's.  Additionally, Ewalt agreed that if there were drugs in the car, the passenger would probably know where they were located.

The officer then left Ewalt in the squad car while he spoke with the passenger.  Based on the video from the officer's squad car, which was admitted into evidence, the officer began speaking with the passenger, who then opened the trunk of the vehicle from inside the passenger compartment.  She exited the vehicle, got her purse out from the trunk, and then handed the officer her identification.  Trooper Smith told the passenger Ewalt had admitted there were drugs in the vehicle and then asked her where they were located.  She told him it

---

[2] Specifically, Trooper Smith testified, "His tongue had raised heat bumps which can be a sigh of marijuana use because marijuana burns hotter than cigarettes with filters."

was in her bag in the car but the drugs belonged to Ewalt. The officer then retrieved the marijuana[3] from the bag.

Trooper Smith conducted a couple more field sobriety tests with Ewalt before ultimately placing him under arrest for possession of marijuana. Ewalt was not charged with driving under the influence.

Then, on August 21, Officer Smith filed a second criminal complaint, alleging interference with official acts. The second complaint was also based on the August 15 stop of Ewalt. The next day, when Trooper Smith reviewed the video from his squad car while writing his report, he noted that while he was out speaking with the passenger, the video had captured Ewalt, who was then sitting in the front seat of the squad car, reaching into the pocket of his pants, retrieving a marijuana pipe, and placing it under the passenger seat in the squad car. After viewing video, the trooper checked his squad car and located the pipe.

Ewalt was charged by trial information with possession of marijuana, in case number AGCR080387. In case number AGCR080405, he was charged by trial information with interference with official acts. At the State's unresisted motion, the two cases were later consolidated.

Ewalt filed multiple motions to suppress. The hearing on the motions took place in August 2016. Following the hearing, the court issued a ruling denying the motion.[4] The court ruled that the extension of the duration of the stop was not unreasonable, as

---

[3] Later testing of the substance confirmed it was 1.25 grams of marijuana.

[4] There was some confusion surrounding the consolidation of the two cases. Ewalt filed three motions to suppress between the two cases—both before and after the consolidation. At the time of the hearing on the motion to suppress—approximately one

> This was a speeding violation stop turned into an operating under the influence investigation almost immediately from the initial moments of the stop due to [Ewalt's] appearance and actions.
>
> This court does not find that the officer developed a reasonable suspicion of other criminal activity only by prolonging the initial stop concerning the speeding violation. The court finds that upon seeing the bloodshot and watery eyes of [Ewalt], along with the shaking hands and recently-lit cigarette, taken in conjunction with the inconsistent driver's license and vehicle registration, it was reasonable for an investigative detention to grow out of the traffic stop with regard to possible operating while under the influence.

Additionally, as to the question of whether the officer should have advised Ewalt of his *Miranda* rights before asking him questions regarding his use of marijuana while Ewalt sat in the front seat of the officer's squad car, the court ruled the officer was not required to advise Ewalt of his *Miranda* rights because he was not in custody while in the squad car.

Ewalt waived his right to a trial by jury; the charges came before the court for a trial on the minutes of evidence. The court found Ewalt guilty of possession of marijuana but acquitted him of interference with official acts. Ewalt appeals.

**II. Standard of Review.**

We review the district court's denial of Ewalt's motion to suppress based on the deprivation of a constitutional right de novo. *See In re Pardee*, 872 N.W.2d 384, 390 (Iowa 2015). Reviewing de novo requires us to make an independent evaluation of the totality of the circumstances as shown by the entire record. *Id.*

---

year later—the court announced it was hearing the motion in connection with the possession case. No one contradicted the court. Accordingly, the court's initial ruling dealt with only the issues raised in the one motion to suppress filed in connection with that case number. Ewalt then filed a motion to amend or enlarge, advising the court of the other motions to suppress in the other case. In January 2017, the court issued a second ruling, granting the motion to expand or enlarge and ruling on the rest of the issues.

We are bound by neither the district court's finding of facts nor its conclusions of law. *In re Petition of Chapman*, 890 N.W.2d 853, 856 (Iowa 2017).

## III. Discussion.

### A. Duration of Stop.

Ewalt challenges the duration of the stop; he maintains the "nearly thirty-minute extension" was not justified by additional criminal activity.

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015). "Like a *Terry* stop,[5] the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and to attend to related safety concerns." *Id.* (citation omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries to [the traffic] stop'" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 1615 (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)).

If, while completing the normal tasks of the "ordinary traffic stop," an officer develops a reasonable suspicion of criminal activity apart from the traffic violation, the officer may extend the traffic stop. *See id.* at 1616 (leaving open the question of whether there was reasonable suspicion of criminal activity to justify detaining

---

[5] *Terry v. Ohio*, 392 U.S. 1 (1968).

the defendant beyond completion of the traffic-infraction investigation); *Pardee*, 872 N.W.2d at 392 (recognizing that adding even a short time to the underlying stop is "unconstitutional unless the government had reasonable suspicion of criminal activity apart from the traffic violation").

Here, Ewalt maintains that, considering the totality of the circumstances, there was not enough evidence for the officer to have a reasonable suspicion of criminal activity when he asked Ewalt to step out of the car and switched the purpose of his investigation. To begin, we note that while the officer switched his investigation to whether Ewalt was driving while under the influence and if he was legally allowed to operate a motor vehicle in Iowa, it is not dispositive that Ewalt was not ultimately charged with either of these crimes. "The purpose of an investigatory stop is to allow a police officer to confirm or dispel suspicions of criminal activity through reasonable questioning." *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002). "'[R]easonable cause may exist to investigate conduct which is subject to a legitimate explanation and turns out to be wholly lawful.'" *Id.* at 642 (citation omitted).

The question before us is whether reasonable suspicion existed to extend the stop in light of the totality of the circumstances known to the officer at the time he decided to do so. *Id.* Reasonable suspicion requires "'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *Id.* At the time the officer asked Ewalt to step back to his squad car, the officer was aware of Ewalt's bloodshot, watery eyes; Ewalt's hand shook when he reached for the registration—which was not in his name; Ewalt did not have an Iowa driver's license though the car he drove was registered in Iowa; he had recently lit a cigarette—possibly to

mask the smell of alcohol or marijuana; and he avoided making eye contact with the officer. The totality of the circumstances convinces us that "'the possibility of criminal conduct was strong enough that, upon an objective appraisal of the situation, we would be critical of the officer[] had [he] let the event pass without investigation.'" *Id.* (citation omitted).

Because the extension of the duration of the stop was supported by reasonable suspicion, it did not violate Ewalt's constitutional rights.

### B. *Miranda* Rights.

Ewalt maintains the officer should have advised him of his *Miranda* rights before asking him questions regarding his use of marijuana while he sat in the patrol car.

"*Miranda* warnings are only required if, at the time of police questioning, the suspect is both: 1) in custody, and 2) subject to interrogation." *State v. Tyler*, 867 N.W.2d 136, 171 (Iowa 2015). "Any statements made by a suspect in response to custodial interrogation are inadmissible unless there has been an adequate recitation of the *Miranda* warning and a valid waiver by the suspect of his or her rights." *State v. Palmer*, 791 N.W.2d 840, 844–45 (Iowa 2010).

"For purposes of the Fifth Amendment, a suspect is in custody as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest." *Tyler*, 867 N.W.2d at 171 (altered for readability) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). We consider four factors in making this determination, "(1) the language used to summon the individual; (2) the purpose, place, and manner of interrogation; (3) the extent to which the defendant is

confronted with evidence of her guilt; and (4) whether the defendant is free to leave the place of questioning." *Id.* at 172 (citation omitted).

We begin with the legal principle that "the temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody." *State v. Pals*, 805 N.W.2d 767, 788 (Iowa 2011) (quoting *Maryland v. Shatzer*, 599 U.S. 98, 113 (2010)). Thus, the question is whether Ewalt accompanying the trooper back to his patrol car was enough to make the encounter custodial in nature. Here, Trooper Smith asked Ewalt to come back to his patrol car so Ewalt could sign something—presumably a citation for speeding— on the computer in the officer's patrol car. The trooper testified he usually asks drivers to do this because "[i]t is safer for [him] to be back in [his] car." He cited both the danger of being unable to see a driver's hands as he approached and walked away from their vehicle and the danger from traffic on the highway while standing at a driver's car. Ewalt agreed to get in the patrol car, and he placed himself in the front, passenger seat. While he sat there, the doors of the patrol car remained unlocked. Based on the totality of the circumstances, the reasonable person in Ewalt's position would not have believed he was in police custody.

In reaching this conclusion, we are persuaded by other cases in which we considered a similar factual situation and reached the same result. *See State v. Page*, 16-1404, 2017 WL 4049495, at *2 (Iowa Ct. App. Sept. 13, 2017); *State v. Plager*, No. 03-0619, 2004 WL 144122, at *2–3 (Iowa Ct. App. Jan. 28, 2004).

Because Ewalt was not in custody when he made incriminating statements to Trooper Smith, the *Miranda* requirements had not been triggered, and Ewalt's constitutional rights were not violated.

**IV. Conclusion.**

Because the extension of the duration of the stop was supported by reasonable suspicion and because Ewalt was not in custody—and *Miranda* requirements had not been triggered—when he made incriminating statements to Trooper Smith, Ewalt's constitutional rights were not violated. The district court properly denied Ewalt's motion to suppress.

**AFFIRMED.**